**Gilbert RIGGS and Brenda Riggs**

v.

**CITY OF PEARLAND, et al.**

**No. Civ.A. G–97–233.**

United States District Court,
S.D. Texas.

Dec. 17, 1997.

---

Gary A. Roth, Attorney at Law, Houston, TX, for plaintiffs.

William Scott Helfand, Magenheim, Bateman, et al., Houston, TX, for defendants.

### *ORDER DENYING RECONSIDERATION OF THE COURT'S DISMISSAL WITH PREJUDICE*

KENT, District Judge.

Plaintiffs commenced this action against Defendants alleging violations of the First, Fourth, and Fourteenth Amendments, as well as, violations of 42 U.S.C. §§ 1983 and 1985. Additionally, Plaintiffs alleged state-law claims involving negligence, assault and battery, defamation, and intentional infliction of emotional distress. After Plaintiffs failed to respond to Defendants' Motion for Summary Judgment filed on June 30, 1997, and also failed to appear as Ordered at a scheduling conference held on September 3, 1997, this case was dismissed with prejudice on September 8, 1997. Now before the Court is Plaintiffs' Motion for Reconsideration. For the reasons that follow, Plaintiffs' Motion is **DENIED.** This case is, and remains, **DISMISSED WITH PREJUDICE.**

## I. FACTUAL SUMMARY

Plaintiff Gilbert Riggs is a diabetic who resides in Pearland, Texas. At approximately 10 p.m. on September 4, 1992, Mr. Riggs was allegedly having a reaction to an accidental overdose of insulin in his Pearland apartment. Common symptoms to an overdose of insulin include weakness, mental confusion, loss of balance, memory loss, slurred speech, erratic or bizarre behavior, seizures, coma, profuse sweating, and disorientation. Hearing noise in Mr. Riggs' apartment, a neighbor called 911 to inform them of a possible disturbance. Pearland Police were dispatched.

When the officers arrived at Mr. Riggs' apartment, they allegedly heard yelling and crashing inside. While trying to determine how many people were in the apartment, the officers looked through the window and saw Mr. Riggs thrashing about in his underwear with a laceration to the right side of his head. According to the officers and emergency medical service personnel at the scene, blood covered the walls as Mr. Riggs continued to throw himself all over the room. After getting the key to the apartment from the apartment manager, the officers entered the apartment and attempted to subdue Mr. Riggs. As they entered the apartment, Mr. Riggs allegedly "crawled rapidly" or "lunged" towards the officers. In response, one of the officers sprayed mace into Mr. Riggs' face. After a struggle, which allegedly involved more mace and physical exertion by all involved, Mr. Riggs was finally cuffed and taken away in an ambulance. Mr. Riggs suffered various minor injuries.

Plaintiffs originally filed this suit in state court. After thirty-one months of procedural machinations, and prior to receiving a ruling on a summary judgment motion filed by Defendants, Plaintiffs amended their state-court petition to include allegations of constitutional violations. The case was subsequently removed to this Court by Defendants. Plaintiffs bring this suit under 42 U.S.C. § 1983 for violations of the Fifth, Fourth, and Fourteenth Amendments. Plaintiffs also allege violations of 42 U.S.C. § 1985. Additionally, Plaintiffs assert Texas state-law claims of negligence, assault and battery, defamation, and intentional infliction of emotional distress. Mrs. Riggs is suing for loss of consortium. Defendants again moved for summary judgment in this case on June 30, 1997. After Plaintiffs failed to respond to Defendant's Motion and also failed to appear as Ordered at a scheduling conference held on September 3, 1997, this case was dismissed with prejudice on September 8, 1997.

## II. DISMISSAL WAS PROPER UNDER RULES 16, 37, AND 41

This Court dismissed this case pursuant to Rules 16 and 41 of the Federal Rules of Civil Procedure. Rule 16(f) provides for the imposition of various sanctions for violations of scheduling and other pretrial Orders of this Court. See FED.R.CIV.P. 16(f). One of the sanctions authorized by Rule 16(f), by reference to Rule 37, is dismissal of the case. See id. Rule 16(f) provides:

(f) Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, *or if no appearance is made on behalf of a party* at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or his own initiative, may make such orders with regard thereto as are *just* and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

FED.R.CIV.P. 16(f) (emphasis added). Rule 16 merely makes explicit this Court's discretionary power to control the expeditious disposition of docketed cases; this power has long been recognized by appellate courts. *See, e.g., Link v. Wabash R. Co.,* 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962) ("The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts.").

Federal Rule of Civil Procedure 37(b)(2) empowers a District Court to impose "just" sanctions on parties who disobey a discovery Order. *See* Fed.R.Civ.P. 37(b)(2). For the violation of a discovery Order, and therefore for violation of a Rule 16 Order, a

District Court can, among other things, order the dismissal of a claim and the payment of the opposing party's expenses, including attorney's fees. *See F.D.I.C. v. Conner,* 20 F.3d 1376, 1380 (5th Cir.1994). Rule 37 grants a District Court considerable, although not unlimited, discretion in fashioning appropriate penalties for those who disobey such an order. *See Chilcutt v. United States,* 4 F.3d 1313, 1320 (5th Cir.1993). An appellate court reviewing a dismissal pursuant to Rules 16 and 37 does not ask whether it would have imposed the same sanction as the District Court; instead, the proper inquiry is whether the District Court abused its discretion in imposing that sanction. *See F.D.I.C.,* 20 F.3d at 1380; *see also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); *Topalian v. Ehrman,* 3 F.3d 931, 934 (5th Cir.1993).

■ Rule 41, the other basis for the Court's dismissal of Plaintiffs' case, provides:

(b) Involuntary Dismissal: Effect Thereof. *For failure of the plaintiff to prosecute or to comply with these rules or any order of court,* a defendant may move for dismissal of an action or of any claim against the defendant.

FED.R.CIV.P. 41(B) (emphasis added). An involuntary dismissal with prejudice pursuant to Rule 41 for failure to prosecute or obey the orders and rules of a District Court, like a dismissal pursuant to Rule 37, is reviewed for an abuse of discretion. *See Callip v. Harris County Child Welfare Dep't,* 757 F.2d 1513, 1519 (5th Cir.1985); *Morris v. Ocean Systems, Inc.,* 730 F.2d 248, 251 (5th Cir.1984).

■ At the outset, the Court understands that the law favors the resolution of legal claims on their merits. *See In re Dierschke,* 975 F.2d 181, 183 (5th Cir.1992). It is clear that dismissal is a severe sanction that implicates due process concerns. *See Brinkmann v. Abner,* 813 F.2d 744, 749 (5th Cir.1987). Moreover, this Court is cognizant of Fifth Circuit precedent which clearly states that "sanctions should not be used lightly, and should be used as a lethal weapon only under extreme circumstances." *E.E.O.C. v. General Dynamics Corp.,* 999 F.2d 113, 119 (5th Cir.1993); *see also Hornbuckle v. Arco Oil & Gas Co.,* 732 F.2d 1233, 1237 (5th Cir.1984) ("When lesser sanctions have proved futile, a district court may properly dismiss a suit with prejudice.").

The Fifth Circuit has articulated several factors that must be present before a District Court may dismiss a case with prejudice as a sanction for violating the Court's orders or rules. First, "dismissal with prejudice typically is appropriate only if the refusal to comply results from wilfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct." *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1032 (5th Cir.1990). Further the violation of the order must be attributable to the client instead of the attorney. *See id.* Finally, the violating party's misconduct "must substantially prejudice the opposing party." *Id.* A review of the cases from the Fifth Circuit reveals that "dismissal with prejudice is reserved for the 'most egregious circumstances.'" *Callip,* 757 F.2d at 1519 (quoting *Rogers v. Kroger Co.,* 669 F.2d 317, 320 (5th Cir.1982)); *see also Brinkmann,* 813 F.2d at 749.

■ The Court views the stringent standard for granting a dismissal with prejudice as a sanction in light of Supreme Court and Fifth Circuit pronouncements. The Supreme Court has admonished that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases." *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781. Indeed, the Fifth Circuit has also recognized that the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not only to penalize those whose conduct may be deemed to warrant such a sanction, but also to deter those who might be tempted to such conduct in the absence of such a deterrent. *See F.D.I.C.,* 20 F.3d at 1383. It is imperative to promote the orderly progress of litigated cases that District Courts be able to invoke punitive instrumentalities. These sanctions must be potent enough to be efficacious, but must also be narrowly tailored to serve only their necessary function. The Court understands that the right to sue is a valuable right that

cannot lightly be exterminated; however, in order to ensure swift and effective justice, orders of the Court must be obeyed when issued, and sanctions for violating such orders must be imposed without an explicit prior warning or a litany of precautionary instructions. There must be some standard by which parties appearing before the Court will be held; there must be a bottom line. Plaintiffs crossed that line. Thus, although this Court is loathe to dismiss a case as a sanction for violating Court orders, the procedural facts of the case at bar reveal that it is an appropriate one for such a sanction.

■ The incident about which Plaintiffs complain occurred over five years ago on September 4, 1992. Plaintiffs originally filed this action in state court on September 6, 1994. On February 22, 1996, because of its vagueness, Plaintiffs were there ordered to replead their case within thirty days, subject to having their pleadings stricken. Although Plaintiffs failed to timely amend, Defendants' motion for dismissal was denied. Plaintiffs then amended their Original Petition on March 27, 1996. Thereafter, on May 30, 1996, Plaintiffs were again ordered by the state court to replead their case within fifteen days to clarify their claims, and again Plaintiffs failed to do so until September 11, 1996. Defendants' motion for dismissal was once again denied. Plaintiffs then voluntarily dismissed their claims against five of the named Defendants.

After Defendants moved for summary judgment, Plaintiffs amended their petition a third time, adding constitutional claims. The case was then timely removed to this Court on April 23, 1997. As is common practice following the filing of a case in this Court, on April 23, 1997, both parties were Ordered to appear on September 3, 1997 for an initial pretrial and scheduling conference. Within the Court's Order issued on April 23, 1997, the Court clearly stated: "Failure to comply with this order may result in sanctions, including dismissal of the action and assessment of fees and costs." [1] Despite such clear and unambiguous language, Plaintiffs' counsel did not appear. Prior to Plaintiffs' failure to appear, Defendants filed a Motion for Summary Judgment on June 30, 1997. Plaintiffs failed to timely respond to that Motion. This case was dismissed with prejudice on September 8, 1997.

■ Plaintiffs' counsel in this case has established a long record of incompetence and case mismanagement.[2] His repeated failures have not only delayed the ultimate resolution of this case by years, but have also substantially prejudiced the opposing parties, costing the named Defendants *unnecessary* time, expense, and anguish. Counsel's conduct has not only needlessly inconvenienced the Court, but, worst of all, has also caused the expenditure of valuable judicial resources which have been irretrievably wasted. This case involves more than noncompliance with two or three pretrial Orders. Instead, there are manifest examples of delays in every stage of the process. Counsel's conduct is consequently intolerable. Although normally[3] a dismissal with prejudice is improper unless the District Court expressly considers alternative sanctions and determines that they are insufficient, see *Callip*, 757 F.2d at 1521, in *Ramsay v. Bailey*, 531 F.2d 706, 709 n. 2 (5th Cir.1976), the Fifth Circuit made clear that where the "plaintiff was fully and repeatedly apprised of the possible imposition of the .... sanction," it was not necessary for the District Court to consider or impose "other possible sanctions, such as conditional orders or dismissal or disciplinary action against the attorney." Plaintiffs have

---

1. The warning was similar to those given Plaintiffs on other occasions when they missed deadlines.

2. The circumstances of this case are analogous to those in *Callip*. In *Callip*, the Fifth Circuit found proper the District Court's dismissal with prejudice of the Plaintiff's case after Plaintiff's counsel, among other things, missed five deadlines imposed by the Court. *See Callip*, 757 F.2d at 1519–20 n. 7.

3. The Fifth Circuit has repeatedly stated that a failure to comply with scheduling and other pretrial orders and rules, in and of itself, does not establish a clear record of delay or contumacious conduct which is required to support a dismissal with prejudice. *See Callip*, 757 F.2d at 1520–21 n. 10 (listing cases where the Fifth Circuit has reversed dismissals with prejudice). The record of delay in this case is much stronger than that in the litany of cases detailed in *Callip*.

been repeatedly warned both at the state-court level and by this Court to conform their conduct and submissions to the applicable rules. Although the Court is reluctant to dismiss a case based on conduct attributable to counsel, rather than the Plaintiffs themselves, a party is bound by the actions of his attorney. *See Link v. Wabash R. Co.,* 370 U.S. at 633, 82 S.Ct. at 1390; *Callip,* 757 F.2d at 1522. There comes a point at which the deficiency in counsel's performance puts Plaintiffs on notice that, unless a new attorney is obtained, the very continuation of the lawsuit is threatened. Given the clear record of delay in this case, counsel's performance *over five years* has clearly reached that point. Because counsel's conduct demonstrates a clear and protracted record of delay or contumacious conduct, dismissal with prejudice is a just sanction in the case at bar. Therefore, Plaintiffs' Motion to Reconsider is **DENIED.**

### III. DISMISSAL IS PROPER UNDER RULE 56

It is clear in this case that dismissal of Plaintiffs' claims was appropriate under Rules 16, 37, and 41. However, in the alternative, dismissal is also proper under Rule 56.

#### A. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law

will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691, 693 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* FED.R.CIV.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting FED.R.CIV.P. 56(e)).

#### B. Controverting Evidence

 Plaintiffs failed to timely respond to Defendants' Motion for Summary Judgment. Rule 6 of the Local Rules allows the Court to treat as unopposed motions without a timely response. *See* Local Rule 6(E) ("Failure to respond will be taken as a representation of no opposition.") Moreover, although the Court normally views summary judgment evidence in a light most favorable

to the nonmovant, where there is no controverting evidence in the record, summary judgment is proper, provided the evidence submitted by the movant establishes one or more factual element sufficient to negate the nonmovant's claims as a matter of law. *See Nash v. Electrospace System, Inc.,* 9 F.3d 401, 402 (5th Cir.1993); *Eversley v. MBank of Dallas,* 843 F.2d 172, 173–74 (5th Cir.1988) (noting that when the nonmovant submits no summary judgment response, the factual allegations of the movant are properly taken as true). The Court understands that it is *per se* reversible error to grant a summary judgment motion simply because the nonmovant fails to respond. *See John v. Louisiana Bd. of Trustees for State Colleges & Universities,* 757 F.2d 698, 707–08 (5th Cir.1985). However, it is clear that due to the failure of Plaintiffs to properly oppose Defendants' Motion for Summary Judgment, the Court is *entitled* to decide the *merits* of this case on Defendants' Motion alone. Regardless of Plaintiffs' failures, however, the Court will address the merits of each claim in light of the summary judgment evidence submitted by *both* sides.

## C. Immunity Bars Plaintiffs' Claims Against the Defendants

The pleadings submitted by Plaintiffs in this case are vague and ambiguous. In shotgun fashion, Plaintiffs assert a plethora of claims against the Defendants. Unfortunately for Plaintiffs, none hit their mark. As the Court reads Plaintiffs' Complaint, there are now three Defendants in this case: the City of Pearland; Donald Alsbrooks, one of the many Pearland police officers who responded to the 911 call; and Julie Davis, a volunteer with Pearland's Emergency Medical Service who also responded to the 911 call. Plaintiffs' first cause of action in their thrice amended Complaint states: "Violation of Civil Rights—Excessive Force, False Imprisonment/False Detention, Deliberate Indifference to Medical Conditions and Denial of Medical Attention, Negligence." Plaintiffs' first cause of action boils down to a claim of excessive force cognizable under § 1983 and a conspiracy claim under § 1985. The Court will address these as such. Plaintiffs' second cause of action states: "Section 1983, Custom, Policy & Practice." The Court will assume, based on the sketchy facts provided by Plaintiffs, that they are weakly attempting to establish liability against the City under § 1983. In Plaintiffs' subsequent causes of action they allege negligence, assault and battery, defamation, and intentional infliction of emotional distress against all Defendants.

### 1. Qualified Immunity of Defendants Alsbrooks and Davis

A suit against a government employee in his official capacity is a suit against the governmental entity. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Pickell v. Brooks,* 846 S.W.2d 421, 424–25 (Tex.App.—Austin 1992, writ denied) (citing *Herring v. Houston Nat'l Exch. Bank,* 113 Tex. 264, 253 S.W. 813, 814–15 (Tex.1923)). Thus, to avoid redundancy, the Court assumes that Plaintiffs sue Defendants Alsbrooks and Davis in their individual capacities. Even if Plaintiffs could state a claim against these individual Defendants, which, as will be discussed below, they cannot, these Defendants are entitled to qualified immunity.

The question of qualified immunity must be addressed as a threshold issue because this issue determines Defendants' immunity from suit, that is, their ability to avoid a trial altogether, rather than merely their immunity from damages. *See Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993). Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). When sued in his individual capacity, a governmental employee is entitled to a presumption of qualified immunity from suit. *See Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990).

To overcome this presumption, a plaintiff has the burden to prove that no reasonable, similarly situated, official could have considered the conduct of the government officials to be lawful, under the circumstances known to him at the time. *See Anderson*, 483 U.S. at 640–41, 107 S.Ct. at 3039–40; *Burns–Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.1994). The reasonableness inquiry of the official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *See King v. Chide*, 974 F.2d 653, 657 (5th Cir.1992). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel*, 918 F.2d at 1183.

 The Fifth Circuit has recognized that "the qualified immunity standard gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)). The Fifth Circuit has also developed a two-step process for the examination of a claim of qualified immunity. The first inquiry is whether Plaintiff has alleged a violation of a clearly established constitutional right. *See Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The next step is to judge the reasonableness of the official's behavior. *See id.* at 657. When the Court has a clear picture of what occurred during an incident giving rise to a qualified immunity defense, the "reasonableness" question becomes one of law. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir.1993)(acknowledging that qualified immunity should normally be determined by the Court). It is clear that the established law provides that Plaintiffs have a right to be free of the various wrongs alleged by them. However, after reviewing the facts alleged by Plaintiffs themselves, the Court finds as a matter of law that the actions of the Defendants were objectively reasonable in light of established law, and are therefore shielded by the qualified immunity defense.[4]

**2. The City Is Absolutely Immune**

 A Texas municipality cannot be held liable for causes of action brought under Texas common law unless the Texas Legislature has expressly waived that city's governmental immunity. *See University of Texas Medical Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994). This immunity has only been waived as to claims brought pursuant to the Texas Tort Claims Act ("TTCA"), TEX.CIV. PRAC. & REM.CODE ANN. § 101.001–101.109 (Vernon 1997). *See Lowe v. Texas Tech University*, 540 S.W.2d 297, 298–99 (Tex. 1976). Thus, Plaintiffs' common-law causes of action against the City in this case are not legally cognizable unless they are clearly waived by the TTCA. *See York*, 871 S.W.2d at 177; *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980).

 Plaintiffs' entire case stems from one incident. Among many other things, Plaintiffs allege assault and battery, intentional infliction of emotional distress, and defamation—all intentional torts under Texas law. The TTCA provides that a municipality cannot be liable for any claims "arising out of assault, battery, false imprisonment, or any intentional tort ...." TEX.CIV.PRAC. & REM. CODE ANN. § 101.057(2). A review of the summary judgment evidence submitted by Plaintiffs reveals that their intentional tort allegations are not waived by the TTCA. Indeed, Mr. Riggs himself stated in his deposition that any force used against him was intentional rather than accidental. Therefore, these claims are absolutely barred by sovereign immunity. *See City of San Antonio v.. Dunn*, 796 S.W.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied)(holding that no waiver of municipal liability existed under the TTCA where plaintiff's claims arose out of allegations of intentional torts, including false arrest and excessive force); *Townsend v. Memorial Medical Center*, 529 S.W.2d 264, 266–67 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *accord Jones*

---

4. Because Defendants' actions were objectively reasonable as a matter of law, they are entitled to qualified immunity; moreover, this finding precludes Plaintiffs' excessive force claims. *See* subpart III(D)(1)(b) *infra*.

*v. Houston Independent School District,* 979 F.2d 1004, 1007 (5th Cir.1992).

In addition to intentional torts, Plaintiffs also allege claims of negligence. The TTCA waives municipal liability for the negligent conduct of public servants acting within the scope of their employment, if such negligence arises from the operation or use of motor-driven vehicles or equipment, or from a defective condition or use of real or tangible personal property, and if under the circumstances a private person would be liable under Texas law. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021. The only facts alleged by Plaintiffs which give rise to a claim of negligence cognizable under § 101.021 are those alleging negligent use of chemical spray and restraints. Plaintiffs factual allegations asserting a failure to identify Mr. Riggs' medical condition, a failure to render proper medical care, a failure to train, control and supervise, and improper police procedures are not waived by the TTCA; therefore, these negligence allegations are barred by sovereign immunity. *See Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974)(declaring that denial of "adequate medical care and treatment" does not allege a "use of tangible property" within the ambit of the Texas Tort Claims Act); *City of Orange v. Jackson,* 927 S.W.2d 784, 786 (Tex. App.—Beaumont 1996, no writ).[5]

Although Plaintiffs' negligence claim alleging improper use of mace and restraints is allowed by § 101.021, that claim is barred due to other provisions of the TTCA. Thus, regardless of whether Plaintiffs' claims alleging improper use of mace and restraints sound in negligence, the TTCA does not waive immunity for claims arising "from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to an emergency situation, or in the absence of

such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." TEX.CIV. PRAC. & REM.CODE ANN. § 101.055(2). Plaintiffs do not argue, and the Court does not find, that applicable laws or ordinances were violated during the incident in question. Moreover, the Court finds no summary judgment evidence demonstrating a conscious indifference or reckless disregard for the safety of Mr. Riggs. To the contrary, the evidence reveals that the officers and medical personnel on the scene at the time of the incident conducted themselves properly. Thus, assuming Plaintiffs could establish the negligent use of restraints and mace on the merits, which, as a matter of law, they cannot,[6] the TTCA bars these claims.

### D. Plaintiffs' Civil Rights Claims Fail on Their Merits

#### 1. Plaintiffs' § 1983 Claims Against the Individual Defendants

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir.1989). Assuming that Plaintiffs could overcome the qualified immunity obstacle, before they can successfully assert § 1983 as a valid cause of action against these Defendants, Plaintiffs must first identify a specific constitutionally protected right that has been infringed. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). Plaintiffs assert underlying violations of the

---

5. Moreover, § 101.055 of the of the Texas Tort Claims Act provides that the Act does not apply to a claim arising from the failure to provide, or the method of providing, police protection. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.055. Sovereign immunity is waived to the formulation of policy, but not to the negligent implementation of that policy. *See Terrell,* 588 S.W.2d at 788. No

evidence is alleged by the parties regarding Pearland policies.

6. Even if not barred by sovereign immunity, the Court finds from the summary judgment evidence that these claims are without merit and that no reasonable jury could find otherwise.

First, Fourth, and Fourteenth Amendments to the United States Constitution as the bases for their § 1983 claims.

### a) Plaintiffs' Alleged First Amendment Violation Does Not Support Liability Under § 1983

▇▇▇▇ The First Amendment prohibits the government from proscribing speech because of disapproval of the ideas expressed. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 384, 112 S.Ct. 2538, 2542, 120 L.Ed.2d 305 (1992). In order to establish infringement of First Amendment rights to support liability under § 1983, evidence must be offered that Plaintiffs engaged in speech, expressive conduct, or association, and the identified speech, conduct, or association must be of the kind considered protected. *See Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989). In this case, Plaintiffs have alleged no facts regarding infringement of speech. Indeed, the only speech identified in the pleadings provided by the parties is the exchange that took place between the police officers and Mr. Riggs as the officers were attempting to subdue him. In that exchange, Riggs alleges that during the struggle he asked the officers to let him explain; in response, Riggs contends that the officers sprayed him with mace, thereby preventing further speech by him. Even if the exchange actually occurred, the Court finds that there is nothing about the remarks alleged by Riggs that are germane to the advancement of knowledge, the transformation of taste, political change, cultural expression, or any other objectives of the First Amendment. *See Cabrol v. Town of Youngsville,* 106 F.3d 101, 109 (5th Cir.1997) (describing that speech protected by the First Amendment). Indeed, invoking the First Amendment in regards to those remarks is ludicrous and borders dangerously close to frivolity.

### b) Plaintiffs' Alleged Fourth and Fourteenth Amendment Violations Are Insufficient to Establish Liability Under § 1983

▇▇▇▇ Plaintiffs seek to invoke the Fourth and Fourteenth Amendments based on allegations of excessive force. A claim of excessive force must take into consideration the particular plaintiff's status. If a free citizen alleges excessive force, the Fourth Amendment applies. *See Graham,* 490 U.S. at 395–96, 109 S.Ct. at 1868. If the excessive force allegation involves a pretrial detainee, then the Fourteenth Amendment is the proper standard. *See Brothers v. Klevenhagen,* 28 F.3d 452, 455–56 (5th Cir.1994). The facts alleged by Plaintiffs in this case reveal that the more rigorous Fourth Amendment analysis applies. Therefore, the Fourteenth Amendment cannot serve as a basis for liability under § 1983.[7]

▇▇▇▇ Pursuant to the Supreme Court's holding in *Graham,* the Fifth Circuit has established a three-part test to be used when considering excessive force claims brought under § 1983. A plaintiff must show: 1) an injury; 2) that the injury resulted directly from the use of force that was clearly excessive; and 3) an excessive use of force that was objectively unreasonable. *See Harper v. Harris County, Tex.,* 21 F.3d 597, 600 (5th Cir.1994); *Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993). Even if Plaintiffs had fulfilled the heightened pleading requirements required by the Fifth Circuit in these cases, which they did not, *see Elliott v. Perez,* 751 F.2d 1472, 1478 (5th Cir.1985),[8] the sum-

---

**7.** The Court is unclear whether Plaintiffs claim that Mr. Riggs was denied adequate medical care. Such a claim by a pretrial detainee is one alleging deprivation of due process under the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Again, the defense of qualified immunity is a bar to denial of medical care claims unless Plaintiffs demonstrate that Defendants' conduct was objectively unreasonable in light of clearly established law existing at that time. *See Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. Therefore, to the extent a denial-of-medical-care claim is alleged, it is barred by qualified immunity.

**8.** In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 165, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), the Supreme Court made clear that heightened pleading requirements no longer apply to suits against municipalities. The Fifth Circuit still allows the heightened pleading requirement in actions against individual government defendants. *See Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996).

mary judgment evidence submitted precludes Plaintiffs' excessive force claims as a matter of law. A police officer is justified in using force in connection with an arrest, not only where he is the subject of an attack, but also where the actions of the individual being arrested give the officer cause to believe that there is a threat of serious physical harm. *See Young v. City of Killeen, Texas,* 775 F.2d 1349, 1353 (5th Cir.1985). Indeed, the Fifth Circuit has stated: "[N]o right is guaranteed by federal law that one would be free from circumstances where he will be endangered *by the misinterpretation of his acts." See id.* (emphasis added). Moreover, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. at 1871 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). Finally, it is well settled that the amount of force that is constitutionally permissible must be judged by the context in which that force is deployed. *See Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir.1996); *see generally Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Plaintiffs have offered no summary judgment evidence that even begins to show that the actions of Defendants Alsbrooks and Davis were objectively unreasonable. Defendants in this case responded to a 911 call. Prior to assessing the situation, they had no idea what they would confront. Upon arriving upon the scene, they found Mr. Riggs in his underwear, covered with blood, throwing himself repeatedly and forcefully against the walls of his apartment. After determining that Mr. Riggs was severely injuring himself, Defendants attempted to stop him. In the process, he made several movements toward them that, in the Court's view, could have easily been interpreted as threatening. Not knowing Mr. Riggs' medical condition or mental state, Defendants responded reasonably to protect themselves. Plaintiffs do not dispute that when the individual Defendants

arrived at Mr. Riggs' apartment he was in the process of severely injuring himself. Plaintiffs do not dispute the contentions in various affidavits that Mr. Riggs lunged at the Defendants. Plaintiffs concede that Mr. Riggs was injured due to efforts to subdue him. Viewing the summary judgment evidence in a light most favorable to Plaintiffs, it is clear to the Court that, as a matter of law, the force used by the arresting officers was objectively reasonable.

### c) Plaintiffs' § 1983 Claims Against the City

Plaintiffs bring a § 1983 action against the City of Pearland. To prevail on a § 1983 action against a municipality, Plaintiffs must prove that: 1) an unconstitutional policy or custom exists; and 2) that the particular injury was a result of this policy or custom. *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc) ("If a city may be liable only where the injury is inflicted in the execution of city policy, the complainant must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."). Having already established that, as a matter of law, no constitutional deprivation occurred in this case, it is irrelevant whether the City's policies would have authorized the conduct about which the Plaintiffs complain. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). Thus, Plaintiffs' § 1983 claim against the City fails on its merits.

### 2. Plaintiffs' § 1985 Claims

Plaintiffs allege a conspiracy pursuant to 42 U.S.C. § 1985. To establish liability for conspiracy under § 1985, a plaintiff must establish: 1) a conspiracy; 2) that the purpose of the conspiracy was to deprive a person of equal protection of the laws, or to deprive a person of his privileges and immunities under the laws; 3) that an act was committed in furtherance of the conspiracy; and 4) that an injury occurred as a result. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–04, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

Plaintiffs' § 1985 claim fails for several reasons. First, like § 1983, a viable

§ 1985 claim requires an underlying violation of constitutional rights or privileges secured elsewhere, or at least, an attempt to do so. *See id.; see also United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). As established above, Plaintiffs' underlying First, Fourth, and Fourteenth Amendments claims are legally insufficient to support liability under § 1983. The absence of a foundation for § 1983 liability precludes a § 1985 conspiracy claim 31 predicated on the same allegations. *See Caldeira v. County of Kauai,* 866 F.2d 1175, 1182 (9th Cir.1989).

Plaintiffs' § 1985 claim also fails because Plaintiffs have failed to properly identify facts sufficient to support the elements of a § 1985 claim. When a plaintiff fails to plead facts sufficient to establish a § 1985 claim, that claim fails as a matter of law. *See Walker v. South Central Bell Telephone Co.,* 904 F.2d 275, 277 (5th Cir.1990). Indeed, Plaintiffs must at least provide facts from which the Court can infer the elements of a conspiracy claim. *See id.* Plaintiffs in this case have failed to do so.

Finally, Plaintiffs' § 1985 claim fails because they have provided no evidence whatsoever of class-based animus. In order to establish a § 1985 claim, a plaintiff must allege that the conspiracy was motivated by an invidiously discriminatory animus. *See Scott,* 463 U.S. at 833–35, 103 S.Ct. at 3359. Plaintiffs do not allege that they are members of a protected class. Again, Plaintiffs have failed in this regard.

### E. Plaintiffs' Defamation Claim Fails

Assuming Plaintiffs could somehow show that their defamation claim is not barred by sovereign or qualified immunity, that claim is time-barred by statute. Texas law requires a claim of defamation to be brought not later than one year after the cause of action accrues. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.002 (Vernon 1997). The

incident in this case occurred on September 4, 1992. Plaintiffs contend that defamatory statements concerning Mr. Riggs' mental state were made by personnel in route to, and at the scene of, the incident. In their third attempt at pleading this case, Plaintiffs added a claim for defamation on April 8, 1997, almost five years after the alleged defamation. Plaintiffs' defamation claim is therefore barred by § 16.002.[9]

### IV. CONCLUSION

Close to 1,000 cases are filed in this Court every year. Indeed, over 700 cases per year are closed here, well over the average of most other District Courts in the United States. This Court has always bent over backwards to provide swift and fair justice for those parties before it. Indeed, this Court has been especially sensitive and receptive to those cases with merit brought pursuant to Civil Rights legislation. Because of this Court's caseload, there is no time for frivolity; there is no time for coddling the less competent of the bar. Moreover, the Court does not appreciate, and will not tolerate, pleadings containing a laundry list of causes of action with no basis in fact or law. Not only does such a practice waste valuable judicial resources, but it also detracts from and minimizes those claims worthy of judicial attention.

The Court sympathizes with the Plaintiffs in this case. The Court understands that they feel they have been wronged. However, the law simply does not provide relief for the actions alleged. The Court also sympathizes with Plaintiffs because of the prolonged nature of this case without closure. Plaintiffs' counsel's conduct in this case is simply inexcusable. In the future this Court will closely scrutinize those cases filed here by Plaintiffs' counsel. Further conduct as demonstrated in this case will result in SEVERE SANCTIONS. In an effort to mitigate further waste of judicial resources, nothing more need be said.

---

9. There is a third reason that Plaintiffs' defamation claim fails as a matter of law. Statements are privileged if they are made to others whom the speaker reasonably believes are entitled to know such information. *See Pioneer Concrete, Inc. v. Allen,* 858 S.W.2d 47, 49 (Tex.App.—Houston [14th Dist.] 1993, writ denied). All statements complained of by Plaintiffs were made in the course of Defendants' attempts to prevent Mr. Riggs from harming himself further.

Similarly, Plaintiffs' intentional infliction of emotional distress claim fails because Plaintiffs have not alleged facts that rise to the level of outrageousness sufficient for such a claim. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991).

For the above reasons, Plaintiffs' Motion to Reconsider is **DENIED.** This case is, and remains, **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**