United States Court of Appeals,

Fifth Circuit.

No. 97-60035.

Blanche RANDOLPH, as Conservator of Deborah Randolph, Plaintiff-Appellant,

v.

Al CERVANTES, Individually and in His Official Capacity as Employee of Pine Belt Mental Health Center; Mary Phillips, In Her Official Capacity as Employee of Pine Belt Mental Health Center; Charles Main, Individually and in His Official Capacity as Executive Director of Pine Belt Mental Health Center; Pine Belt Mental Health Center; James T. Crane, Individually and in His Official Capacity as Commissioner of Region Twelve Mental Health Commission; Jack D. Triggs, Individually and in His Official Capacity as Commissioner of Region Twelve Mental Health Commission; Greg Breland, Individually and in His Official Capacity as Commissioner of Region Twelve Mental Health Commission; Joe B. Thompson, Individually and in His Official Capacity as Commissioner of Region Twelve Mental Health Commission; Ray Humphreys, Individually and in His Official Capacity as Commissioner of Region Twelve Mental Health Commission; Lela Buckley, Individually and in Her Official Capacity as Commissioner of Region Twelve Mental Health Commission; Alfred Lott, Individually and in His Official Capacity as Commissioner of Region Twelve Mental Health Commission; Kathy Evans, Individually and in Her Official Capacity as Commissioner of Region Twelve Mental Health Commission; and Region Twelve Mental Health Commission, a Body Politic, Defendants-Appellees.

Dec. 22, 1997.

Appeal from the United States District Court for the Southern District of Mississippi.

Before MAGILL,[*] SMITH and DeMOSS, Circuit Judges.

MAGILL, Circuit Judge:

This 42 U.S.C. § 1983 *DeShaney* claim is on appeal from the district court's grant of summary judgment in favor of the state-actor defendants. The law being settled in this Circuit, we

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

1

affirm.

I.

Pine Belt Mental Health Center (Pine Belt) serves patients located in Mississippi's Region XII, a geographic region including nine counties. In addition, Pine Belt owns and operates Pine Hill Apartments, an apartment complex, and leases units in the complex to patients enrolled in Pine Belt's transitional living program.

Between 1978 and 1991, Deborah Randolph was committed to various Mississippi state mental hospitals on at least nine separate occasions. In December 1991, after Randolph allegedly set fire to her mother's mobile home, Randolph's mother refused to allow Randolph to live with her and again initiated involuntary commitment proceedings against Randolph.

On December 11, 1991, the Forrest County Chancery Court conducted a sanity hearing for Randolph. Al Cervantes, one of Pine Belt's caseworkers, testified that Randolph could remain in the community and did not need to be involuntarily hospitalized. After considering "[o]ut-patient care, day treatment in a hospital, night treatment in a hospital, home health services, and custodial placement with an individual, and others ... *as alternatives to institutionalization*," I J.A. at 51 (emphasis added), the Chancery Court released Randolph on her own recognizance and ordered Randolph to attend out-patient treatment at Pine Belt under Cervantes's supervision.

After being released on her own recognizance, Randolph executed a lease for her own government-subsidized apartment. She

2

resided at the apartment until June 1992, when she was evicted for failing to comply with her rent agreement.

Cervantes then helped Randolph apply for residence at Pine Hill Apartments. On July 1, 1992, Randolph executed a lease with Pine Belt for a unit at Pine Hill Apartments. The lease required Randolph to abide by Pine Hill Apartments's rules and to participate in various programs sponsored by Pine Belt. The lease also provided that either Randolph or Pine Belt could terminate the lease upon thirty days written notice. Randolph's residence at Pine Hill Apartments was voluntary, and Randolph at all times retained the right to come and go from her unit and Pine Hill Apartments at will.

On August 18, 1992, Randolph found a used insulin syringe in a diabetic neighbor's garbage receptacle. Randolph then injected some of that neighbor's insulin into each of her own eyes. Despite emergency surgery, Randolph lost one eye entirely and retained only limited light perception in her other eye.

Randolph's mother, acting as Randolph's conservator, filed suit under 42 U.S.C. § 1983 against the Region XII commissioners, Pine Belt, Pine Belt's executive director, and two Pine Belt employees (collectively, the defendants), asserting that Randolph's Fourteenth Amendment due process rights were violated while she was residing at Pine Hill Apartments because the defendants did not prevent Randolph from injuring herself. The district court granted summary judgment to the defendants on the basis that the defendants did not have a constitutional duty to protect Randolph from her

3

self-inflicted injuries.  Randolph's mother appeals.

## II.

We review the district court's grant of summary judgment de novo and examine the evidence in the light most favorable to the nonmoving party.  *See Hanks v. Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992).

To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994).[1]  In this case, Randolph's mother alleges that the defendants had a constitutional duty to protect Randolph from her self-inflicted injuries because either (1) a "special relationship" existed between Randolph and the defendants or (2) the defendants created the danger that befell Randolph.  We disagree.

## A.

The Due Process Clause of the Fourteenth Amendment confers upon an individual the right to be free of state-occasioned damage to her bodily integrity, not the entitlement to governmental protection from injuries caused by non-state actors. *See DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196-97, 109 S.Ct. 998, 1003-04, 103 L.Ed.2d 249 (1989); *Walton v. Alexander,* 44 F.3d 1297, 1302 (5th Cir.1995) (en banc).  Thus, as a general

---

[1]We assume, without deciding, that Pine Belt is a state actor subject to potential liability under § 1983.

4

rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney,* 489 U.S. at 197, 109 S.Ct. at 1004.

The Supreme Court has recognized an exception to this general rule where a special relationship exists between the state and the individual. *See id.* at 199-200, 109 S.Ct. at 1005-06. Particularly, the Supreme Court has explained that a state may have the constitutional duty to protect an individual from private violence if the state, "through incarceration, institutionalization, or other similar restraint of personal liberty," has limited the individual's freedom to act on her own behalf. *Id.* at 200, 109 S.Ct. at 1006. This Court has explained, however, that the *DeShaney* special relationship exists "only when the state, by its affirmative exercise of power, has custody over an individual *involuntarily or against his will....*" *Walton,* 44 F.3d at 1303. "Absent this "special relationship,' the state has no duty to protect nor liability from failing to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor." *Id.* at 1306.

In this case, Randolph was not involuntarily confined against her will when she resided at Pine Hill Apartments. The Chancery Court released Randolph on her own recognizance and only ordered her to obtain *out-patient* treatment from Pine Belt. Randolph voluntarily entered into the lease with Pine Belt and became Pine Belt's tenant. While Randolph's lease at Pine Hill Apartments required her to attend various Pine Belt programs, the lease also

5

specifically enabled Randolph to terminate the lease upon thirty days written notice. Moreover, Randolph was free to come and go from Pine Hill Apartments at any time.

Randolph's mother further contends that a "special relationship" existed between Randolph and the defendants because Randolph's mental condition made Randolph compliant with Cervantes's suggestions and reliant on Cervantes's and Pine Belt's care and services. However, the mere fact that Randolph's mental condition may have made her functionally dependant on Pine Belt and Cervantes does not transform her voluntary tenancy at Pine Hill Apartments into an involuntary confinement creating a "special relationship." *See Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 992 (1st Cir.1992) (finding no special relationship where the mental patient's dependency on his caretakers resulted from his own mental condition and where "[h]is helplessness was not attributable to the state's having taken him into custody involuntarily").

In this case, the defendants never took the affirmative step of restraining Randolph's liberty so that she was rendered unable to care for herself, and the defendants never held her involuntarily or against her will. Accordingly, a "special relationship" did not exist between Randolph and the defendants.

### B.

The state-created danger theory has not been adopted in this Circuit. *See Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1415 (5th Cir.1997) (en banc); *Piotrowski v. City of Houston,* 51

F.3d 512, 515 (5th Cir.1995). However, even if we were to adopt this theory, Randolph's mother could not recover. To prevail under the state-created danger theory, "[t]he environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 201 (5th Cir.1994). "The key to the state-created danger cases ... lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id.* (quotations and citation omitted). Viewing the evidence in the light most favorable to Randolph's mother, the defendants allowed and encouraged Randolph to voluntarily reside at Pine Hill Apartments as a tenant having the right to come and go from the premises at any time and having the right to cancel her lease. This will not trigger a duty under the state-created danger theory, even if we were to adopt such a theory.

### III.

For the foregoing reasons, the district court's grant of summary judgment is affirmed.

AFFIRMED.