Laurie **ABDELJALIL**, et al., Plaintiffs,

v.

**CITY OF FORT WORTH,**
et al., Defendants.

No. 4:98–CV–342–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

June 30, 1999.

William R Power, Law Office of William R Power, Arlington, TX, Jimmie A Franklin, Law Office of Jimmie A Franklin, Fort Worth, TX, Fred E Stoops, Sr, Stoops & Clancy, Tulsa, OK, for Plaintiffs.

Richard E. Henderson, Fort Worth City Attorney's Office, Ross T. Foster, Law

Office of Ross T. Foster, Gerald Pruitt, Law Office of Gerald Pruitt, Fort Worth, TX, for Defendants.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Came on for consideration the motions of defendants City of Fort Worth ("City") and Shirley Walker ("Shirley") for summary judgment as to all claims of plaintiffs, Laurie Abdeljalil ("Laurie"), individually and as administratrix of the estate of Khaled Kasem Abdeljalil ("Khaled"), deceased, Marcus Walker ("Marcus") and Sarah Walker ("Sarah"), appearing through Laurie as their next friend, and Kasem Mahmoud Abdeljalil ("Kasem"), (collectively "plaintiffs"). The court has concluded that the motions should be granted.[1]

### I.

### *Plaintiffs' Complaint*

On May 18, 1998, plaintiffs filed their third amended complaint, their current live pleading.[2] In it, they allege that:

Prior to October 19, 1997, Shirley worked in the evidence room of the Fort Worth Police Department ("police department") as a civilian employee. There, she obtained by means of the computer she used in her work personal and confidential information about Khaled and Laurie, including their home address, unpublished home telephone number, and Khaled's full name, which she provided to her son, Duncan Walker ("Duncan"), Laurie's ex-husband and the father of Marcus and Sarah.

On October 19, 1997, Duncan used this information to locate the home of Khaled and Laurie. Duncan then murdered Khaled using an 8–10" folding pocket knife that Shirley had stolen from the police department evidence room and given to Duncan. Laurie and the children witnessed the murder. Thereafter, Duncan attacked Laurie, Marcus, and Sarah.

Plaintiffs assert their claims against defendants pursuant to 42 U.S.C. §§ 1983 (" § 1983") and 1988 (" § 1988") for violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and also assert a right of action under the Texas Tort Claims Act, and negligence, gross negligence, bystander recovery, and negligent infliction of emotional distress claims pursuant to Texas law. Plaintiffs seek to recover actual damages, punitive damages, and attorneys' fees.

### II.

### *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential

---

**1.** The claims against a third defendant, Tammy Rachall, were dismissed by judgment signed July 27, 1998, which was affirmed by the Fifth Circuit on June 22, 1999. *Abdeljalil v. City of Fort Worth,* No. 98–10971, —— F.3d ——, slip op. at 5 (5th Cir. June 22, 1999).

Certain claims of plaintiffs against Walker were dismissed by order signed December 22, 1998. That dismissal included claims that were asserted against Walker in her official capacity as an employee of City of Fort Worth. The court deems that all claims that were asserted against Walker in her official capacity are claims against City of Fort Worth.

**2.** Plaintiffs have unsuccessfully sought to file fourth, fifth, and sixth amended complaints. After having reviewed the allegations in the proposed amended complaints, the court has concluded that the outcome of the motions for summary judgment would have been the same under any of the proposed versions of the complaint.

elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984). ·

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348.

### III.

#### *Analysis*

A. *Plaintiffs' Claims against City.*

1. *Claims Pursuant to 42 U.S.C. § 1983.*

 Section 1983 provides a mechanism for seeking redress for an alleged deprivation of a litigant's federal constitutional or federal statutory rights by a person acting under color of state law. A municipality is considered a person for purposes of § 1983. *Monell v. Dept. of Soc. Services of City of New York* 436 U.S. 658, 689, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, to hold a municipality liable under § 1983, plaintiff must identify a municipal "policy" or "custom" that caused his injuries. *See Board of County Comm'rs of Bryan County. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). This practice ensures that the defendant municipality is held liable "only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be said to be those of the municipality." *Id.* (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018 (1978)).

 Liability may not be imposed upon a municipality simply because it employs a tortfeasor, *see Pembaur v. Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), or on a theory of *respondeat superior, Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Further, plaintiff may not succeed in imposing liability on a municipality simply by "idenify[ing] conduct properly attributable to the municipality." *Brown,* 520 U.S. at 404, 117 S.Ct. 1382. Instead, plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (emphasis in original). Finally, plaintiff must show "a direct causal link between the municipal action and the deprivation of the federal right." *Id.*

In the present case, plaintiffs seek to hold City liable for being deliberately indifferent in the hiring, training, and/or supervision of its employees.[3] Logically applied, under plaintiffs' theory of recovery, had City not engaged in such deliberately

---

**3.** As a threshold matter, the court concludes that there is no evidence that Shirley was an

indifferent conduct, plaintiffs' constitutional rights would not have been violated.

■ Addressing a municipality's potential liability for hiring a future tortfeasor, the Supreme Court has held that plaintiff can succeed on such a claim only if she demonstrates that defendant did not adequately screen the tortfeasor's background, and such disregard of the tortfeasor's background "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown,* 520 U.S. at 411, 117 S.Ct. 1382. Here, plaintiffs have not offered evidence, or even alleged, that there was anything in Shirley's background at the time she was hired in 1981 by City that would cause the relevant policy-makers "to conclude that the plainly obvious consequences of the decision to hire [Shirley] would be the deprivation of a third party's federally protected right." *Id.* Thus, City cannot be held liable under § 1983 for being "deliberately indifferent" in the hiring of Shirley. *See id.; see also Doe v. Hillsboro Independent Sch. Dist.,* 113 F.3d 1412, 1415–1416 (5th Cir.1997) (en banc) (plaintiff's inability to demonstrate nexus between perpetrator's criminal assault and defendant employer's failure to check perpetrator's criminal background was fatal to plaintiff's claim under § 1983).

■ Plaintiffs next argue, in a general way, that City is liable under § 1983 because it inadequately trained and supervised Shirley and other police department employees after they were hired. To recover from a municipality on a theory of inadequate training or supervision pursuant to § 1983, plaintiff must demonstrate that the failure to train "amounts to delib-

erate indifference to the rights of persons with whom the [tortfeasor] comes into contact." *See City of Canton v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Next, plaintiff must establish a causal link between the alleged inadequate training or supervision and plaintiffs' injuries. *See id.* at 391, 109 S.Ct. 1197. The court concludes that plaintiffs have not raised an issue of fact as to either element.

■ Simply put, there is no evidence that any lack of training or supervision on the part of City or police department was so deficient as to constitute "deliberate indifference" to the rights of people with whom Shirley might come in contact. *See Rhyne v. Henderson County,* 973 F.2d 386, 392 (5th Cir.1992) (§ 1983 claim brought by mother of pretrial detainee who committed suicide in jail failed because evidence would not support finding that defendant county had a policy of inadequately training jail staff). There is no evidence regarding the amount of training police department employees received, the training or supervision they lacked, or how additional training and supervision could have prevented plaintiffs' injuries. *See id.* Furthermore, there is no evidence that if Shirley and the other employees had received additional training and supervision she would not have intentionally stolen property from the evidence room or obtained information by use of City's computers. Finally, there is no evidence that City's alleged failure to adequately train and supervise Shirley is "closely related to the ultimate injur[ies]" suffered by plaintiffs. *Canton,* 489 U.S. at 391, 109 S.Ct. 1197.

---

official policy-maker of City or the police department. Fort Worth is a Home Rule City. *See* Def. City's App. at 006. As a Home Rule City, Fort Worth has the full power of local self-government. *See Zachry v. City of San Antonio,* 296 S.W.2d 299, 301 (Tex.Civ.App.— San Antonio 1956), *aff'd,* 157 Tex. 551, 305 S.W.2d 558 (1957). Pursuant to such authority, Fort Worth has vested and retained its

official policy-making authority in the Office of the City Manager and the City Council. *See* Def. City's App. at 007, 011–012. Thus, as a matter of law, Shirley did not have authority to create City policy. *See id.* at 003–007. Plaintiffs apparently concede this point, as they abandon their position that Shirley was an official policy-maker in their response to City's motion for summary judgment.

To the contrary, there is undisputed evidence before the court that the police department prohibited the removal of guns and knives from the property room and that the police department prohibited evidence room employees from using City computers for unauthorized, personal purposes. The apparent consequence for violating these rules is termination from employment with the police department. Undisputed evidence also exists to suggest that the police department periodically inventoried the guns and knives in the evidence room, and took steps to ensure that all guns and knives were kept under lock and key and then incinerated after the appropriate time had passed. Finally, undisputed evidence exists to demonstrate that those rules and practices were followed and enforced by the police department of City.[4] In summation, the court concludes that plaintiffs' have not identified any policy of inadequate training or supervision that resulted in plaintiffs' injuries and losses.

■■■■ Plaintiffs argue for the first time in their response to City's motion for summary judgment that City is liable for Shirley's conduct pursuant to a municipal "custom or usage."[5] *See* Pl.'s Resp. to City's Mot. at 28–36. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404, 117 S.Ct. 1382. To impose liability upon a municipality for a "custom" that violates

plaintiff's constitutional rights, plaintiff must: (1) identify the specific "custom or usage;" (2) attribute the "custom or usage," and fault for its existence, to the municipality; and (3) identify the necessary affirmative link between the "custom" and the specific violation. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). To prove the second element, plaintiff must demonstrate that the people or governmental body charged with policy-making authority had actual or constructive knowledge of such "custom." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985) ("Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.").

■■■■ The court concludes there is no evidence to support plaintiffs' theory of a "custom or usage" within the police department of permitting Shirley, or any other employees to steal weapons from the property room, or to use City's computers for their personal use. Evidence exists to suggest that Shirley stole a large number of weapons from the evidence room. However, there is no evidence that other police department employees engaged in such conduct so that it became a pervasive practice within the police department, *see Bal-*

---

4. In the Summer of 1988, the Fort Worth Police determined that a student-employee of the police department had stolen firearms from the evidence room. The police department arrested the student and charged him with theft. Contrary to plaintiffs' assertions, the police department changed certain evidence room policies relating to the destruction of property after the student's arrest.

5. Arguments raised for the first time in a response to a motion for summary judgment will not be considered by the court. *See Hang On, Inc. v. City of Arlington*, 65 F.3d 1248,

1255–56 (5th Cir.1995). Plaintiffs attempt to subvert this rule by asserting that their argument is simply an "alternative bases (sic) for liability." Pl.'s Compl. at 30 (citing *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988)). *Spell* is distinguishable from the present case because the plaintiffs in *Spell* actually pleaded municipal liability pursuant to a "policy or custom" in their complaint. *Id.* at 1384. Regardless, the court will address the deficiencies of plaintiffs' "custom or usage" theory.

*tazor v. Holmes,* 162 F.3d 368, 377 (5th Cir.1998) (evidence of one person's racial comments does not establish that such remarks so pervaded the workplace as to create a custom), or that the relevant policymakers had actual or constructive knowledge of Shirley's actions, *see Webster v. City of Houston,* 735 F.2d 838, 841–42 (5th Cir.1984) (en banc) (actual or constructive knowledge must be attributable to governing body or officials to whom that body had delegated policy-making authority), *modified on other grounds on reh'g,* 739 F.2d 993 (5th Cir.1984) (en banc). Finally, plaintiffs have not identified the necessary "affirmative link" between any "custom" within the police department and the alleged constitutional deprivations suffered by plaintiffs. *See Brown,* 520 U.S. at 404, 117 S.Ct. 1382 ("The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.") (emphasis in original). Thus, plaintiffs' claims against City pursuant to 1983 must fail.

■ More generally, plaintiffs have not offered any summary judgment evidence in support of the legally required element of proximate cause. For a governmental unit to be liable under § 1983, the policy, custom, or conduct about which the plaintiff complains must be a proximate cause of the constitutional violation. *Rheuark v. Shaw,* 628 F.2d 297, 305 (5th Cir.1980), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981). For proximate cause to be proved, there must be evidence of cause in fact and foreseeability. *Nettles v. Griffith,* 883 F.Supp. 136, 145 (E.D.Tex.1995). There is no evidence on which a fact-finder could base a finding that any policy or custom or act or omission of City, or for that matter Shirley, was a proximate cause of the assault about which plaintiffs complain. There is no evidence that any such thing was the cause in fact of the assault, much less is there any evidence that City or Shirley could have foreseen that anything about which plaintiffs complain would have led to the assault.

### 2. Conspiracy Theory.

■ Plaintiffs next allege that Shirley conspired with Duncan to cause their injuries. *See* Pl.'s Compl. at 5. To prove a claim of conspiracy between a state actor and a private citizen pursuant to § 1983, plaintiff must demonstrate that the defendants deprived her "of a right secured by the Constitution and laws of the United States," and that at least one of the defendants acted "under color of state law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, as noted above, plaintiffs cannot hold City liable for the independent acts of Shirley. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018. And, plaintiffs have failed to raise an issue of fact as to whether Shirley committed any of the acts complained of by plaintiffs pursuant to policy or custom of City. *See* discussion *supra* section V.A.1. Thus, their conspiracy claims against City fails for this added reason.

### 3. State Law Claims.

■ Plaintiffs allege that City is liable "under the Texas Tort Claims Act for the negligence that proximately caused the occurrence in question and the death and injuries and damages sustained by Plaintiffs ...." Pl.'s Compl. at 6. In Texas, a city is immune from liability unless the legislature waives its sovereign immunity by clear and unambiguous language. *See City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995). The Texas Legislature enacted the Texas Tort Claims Act ("TTCA") to provide a limited waiver of immunity in certain situations involving the use of a motor-driven vehicle or personal injury and death caused by the use of tangible personal or real property. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Thus, to sue a governmental unit for negligence, plaintiff must bring her suit pursuant to the TTCA. *See Harris County v. Ochoa,* 881 S.W.2d 884 (Tex. App.—Houston [14th Dist] 1994, writ denied).

■ Assuming *arguendo* that City did something, or failed to do something, that proximately caused the injuries suffered by plaintiffs, City would still be immune from liability under the TTCA. First, the injuries plaintiffs suffered were the result of the criminal acts of a third party, Duncan Walker. A city is immune from liability for intentional torts committed by third parties. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1997). "A municipality is exempt from liability for intentional torts 'arising out of assault, battery, false imprisonment or any other intentional tort . . . .'" *Barefield v. City of Houston,* 846 S.W.2d 399, 406 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (quoting TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2)); *see also Gonzales v. City of El Paso,* 978 S.W.2d 619, 623 (Tex.App.—El Paso 1998, no writ) (city not liable for criminal acts of third parties under TTCA).

Further, the only facts alleged by plaintiffs that give rise to a claim of negligence against City are those alleging negligence in the hiring, supervision and training of its employees. *See Downey v. Denton County, Tex.,* 119 F.3d 381, 388 (5th Cir. 1997) (Texas Supreme court urges that the "court look [ ] to the conduct that is the subject of the complaint, and not the status of the tortfeasor" in claims asserted under TTCA). Those claims do not arise from the operation or use of motor-driven vehicles or equipment, or from a defective condition or use of real or tangible personal property. Therefore, such claims are barred by sovereign immunity. *See Riggs v. City of Pearland,* 177 F.R.D. 395, 406 (S.D.Tex.1997) (citing *Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex. 1974)); *see also Holder v. Mellon Mortgage, Co.,* 954 S.W.2d 786, 805–08 (Tex. App.—Houston [14th Dist.] 1997, writ granted) (plaintiff who alleged city was negligent in failing to properly supervise or monitor police officer's use of department property failed to establish waiver of City's immunity); *McCord v. Memorial Med. Ctr. Hosp.,* 750 S.W.2d 362, 363 (Tex. App.—Corpus Christi 1988, no writ) (claims against hospital pursuant to TTCA for negligent hiring and supervision barred despite fact that hospital employee used hospital nightstick to commit assault).

Moreover, the state law tort claims by plaintiffs against City are without merit for the further reason that there is no summary judgment evidence that would allow a fact-finder to find that any of the conduct about which plaintiffs complain was a proximate cause of the injuries and damages claimed by plaintiffs. The court will dismiss plaintiffs claims against City for common law negligence, and for negligence pursuant to the TTCA.

■ Laurie, Marcus and Sarah also seek to recover for negligent infliction of emotional distress and for bystander recovery.[6] In response, City argues that Texas law does not recognize a cause of action for negligent infliction of emotional distress. City is correct. *See*

6. Laurie, Marcus, and Sarah attempt to reclassify their claims for negligent infliction of emotional distress and for bystander recovery as a claim for intentional infliction of emotional distress. *See* Pl.'s Resp. at 46. However, in the cases cited by Laurie, Marcus and Sarah in support of their argument, the plaintiff pleaded a claim for intentional infliction of emotional distress. *See Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62 (Tex. 1998); *Mendoza v. American Nat'l. Ins. Co.,* 932 S.W.2d 605 (Tex.App.—San Antonio 1996, no writ). In their third amended complaint, Laurie, Marcus, and Sarah only pleaded claims for negligent infliction of emotional distress and for bystander recovery. Thus, their reliance of the *Johnson* and *Mendoza* is misplaced, and the court will not permit them to replead their claims as ones for intentional infliction of emotional distress. *See Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1255–56 (5th Cir.1995).

Moreover, even if a claim of intentional infliction of emotional distress were in the case at this time, it would not be supported by the summary judgment evidence. *See Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993) (enumerating elements of intentional infliction of emotional distress). In any event, there is no summary judgment evidence of the elements of the theory of intentional infliction of emotional distress.

*Boyles v. Kerr,* 855 S.W.2d 593, 594 (Tex. 1993). Furthermore, Laurie, Marcus, and Sarah cannot recover for bystander recovery of mental anguish based on their witnessing of Khaled's murder at the hands of Duncan. Texas law generally permits a bystander to recover mental anguish damages after witnessing a close relative suffer a traumatic injury because of defendant's negligent action. *See Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 80 (Tex.1997). However, there is no evidence that City "negligently inflicted serious or fatal injuries on the primary victim," Khaled. *Boyles,* 855 S.W.2d at 598. Instead, the undisputed facts clearly show that Khaled was murdered by Duncan. Furthermore, bystander recovery seems to be limited to the situations where the plaintiff had contemporaneous awareness that the defendant's conduct caused harm to the victim. *See Edinburg Hosp. Auth.,* 941 S.W.2d at 80. Laurie, Marcus, and Sarah have not pleaded that they were aware of Shirley's role in the attack at the moment it occurred.[7] Rather, their claims are based on an unfolding series of events of a type to which bystander liability does not extend. *See id.; Cf. Cavanaugh v. Jones,* 863 S.W.2d 551, 556–57 (Tex.App.—Austin 1993, writ denied); *Robinson v. Chiarello,* 806 S.W.2d 304, 310 (Tex.App.—Fort Worth 1991, writ denied). Furthermore, there is no evidence of causation that would support the claims for negligent infliction of emotional distress or for bystander recovery even if those claims were otherwise viable. Thus the court will dismiss plaintiffs' claims for negligent infliction of emotional distress and for bystander recovery.[8]

B. *Plaintiffs' Claims against Shirley Walker.*

1. *Conspiracy Claims.*

■■■■ Plaintiffs seek to hold Shirley liable for entering into a civil conspiracy

with Duncan that eventually caused their injuries. *See* Pl.'s Compl. at 5. The elements for a cause of action for conspiracy are: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful or overt acts; and (5) resulting damages. *Meineke Discount Muffler v. Jaynes,* 999 F.2d 120, 124 (5th Cir.1993); *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983); *First State Bank v. Keilman,* 851 S.W.2d 914, 925 (Tex.App.—Austin 1993, writ denied). A civil conspiracy "require[s] that there be a single plan, the essential nature and general scope of which is known to each person who is to be held responsible for its consequences." *Hoffman–La Roche, Inc. v. Greenberg,* 447 F.2d 872, 875 (7th Cir. 1971). There is no evidence that Shirley and Duncan shared any objective related to the events giving rise to plaintiffs' claims, or had a meeting of the minds regarding the manner in which they would achieve any of these alleged objectives. Laurie herself testifies that she does not know of any instance when Shirley incited or encouraged Duncan to commit the criminal acts for which he was convicted. Thus, the court will dismiss plaintiffs' theory based on civil conspiracy.

■■■■ Should plaintiffs argue that their conspiracy theory is brought pursuant to 42 U.S.C. § 1985(3), they still have failed to plead a proper cause of action. To assert a conspiracy claim pursuant to § 1985(3), plaintiffs must allege, among other elements, that the actions of the co-conspirators were motivated by racial animus. *Wong v. Stripling,* 881 F.2d 200, 202–03 (5th Cir.1989) (citing *United Bhd. of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Here, plaintiffs

---

**7.** Indeed, the court finds as a matter of law that the minor plaintiffs, ages 2 and 5 at the time, could not have had a conscious awareness of Shirley's role, if any, in the attack.

**8.** The negligent infliction of emotional distress and bystander recovery of mental anguish claims against Shirley were dismissed by an order signed December 22, 1998.

have failed to allege that "racial animus" alone motivated any of the defendants' actions. Thus, any conspiracy claim asserted by plaintiffs pursuant to § 1985(3) must also fail. *See Green v. State Bar of Texas,* 27 F.3d 1083, 1088 n. 8 (5th Cir.1994) (failure to plead racial animus motivated defendant's actions is fatal to plaintiff's claim).

### 2. *Constitutional Claims.*[9]

 To hold an individual liable under § 1983, plaintiffs must demonstrate: (1) abusive conduct committed by a person acting under color of state law; and (2) that such conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Daniels v. Williams,* 474 U.S. 327, 329–36, 106 S.Ct. 662 (1986). Section 1983 does not create any substantive rights, but only a remedy for violations of rights secured by federal law. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Irby v. Sullivan,* 737 F.2d 1418, 1427 (5th Cir.1984). For the second element to be established, there must be proof that the conduct about which complaint is made was a proximately cause of the deprivation, *i.e.,* that the conduct about which complaint is made was the cause in fact of the deprivation and that a person of ordinary prudence would have foreseen that the conduct in question would have caused such a deprivation. *Rheuark,* 628 F.2d at 305; *Nettles,* 883 F.Supp. at 145. There simply is no summary judgment evidence that would support a finding in favor of the plaintiffs on either the cause in fact or the foreseeability elements of proximate cause.

Additional reasons why constitutional claims against Shirley are without merit are set forth below: [10]

### a. *Privacy Claims.*[11]

 Plaintiffs allege that Shirley violated their right to privacy by using City's computer to determine Khaled's name, as well as their home address and unlisted telephone number, and by turning this information over to Duncan. In the context of governmental disclosure of personal matters, an individual's right to privacy is violated if (1) the person had a legitimate expectation of privacy and (2) that privacy interest outweighs the public need for disclosure. *See Cantu v. Rocha,* 77 F.3d 795, 806 (5th Cir.1996). In the present case, Laurie, Khaled, Marcus, and Sarah could not have had a legitimate expectation of privacy. Laurie was under a court order to provide Duncan with her home address and telephone number. *See* Def. Shirley's App. at 46–48. Further, the Bible affidavit demonstrates that the home address of Laurie and Khaled became public information on October 2, 1997,[12] seven-

---

9. In their response to Shirley's motion for summary judgment, plaintiffs attempt to assert for the first time a claim for violations of their Fifth Amendment right to substantive due process. That claim was not alleged in their third amended complaint, and cannot be asserted for the first time in plaintiffs' response to a motion for summary judgment. *See Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1255–56 (5th Cir.1995). However, even if such a claim were to be considered, it would not be supported by summary judgment evidence.

10. These additional reasons why there is no merit to plaintiffs' constitutional claims against Shirley provide, as well, additional reasons why plaintiffs' constitutional claims against City are without merit.

11. This portion of the court's memorandum opinion addresses page 4, ¶ 14, sub-parts (a), (b), (c) and (d) of plaintiff' third amended complaint. In their response to Shirley's motion for summary judgment, plaintiffs assert that these claims are brought pursuant to the Fourth Amendment to the United States Constitution.

12. Defendants rely on the Affidavit of Jim Beardon to rebut Bible's affidavit. *See* Def.'s App., Ex. 20. However, Beardon does not have personal knowledge of the Marriage License Department of the Tarrant County Clerks Office, and his summary of the procedure regarding the issuance of a marriage license without a "Return To:" address is based entirely on hearsay. *See id.* Thus, it

teen days before the murder of Khaled. *See id.* at 1–3.

Moreover, there is no summary judgment evidence that information obtained by Shirley through use of the computer is what caused Duncan to be aware of the address to which he went on the occasion when he committed the murder. Thus, if there was any violation of a constitutional privacy right because of Shirley's use of the computer, there is no summary judgment evidence that such a violation caused harm to plaintiffs.

### b. *Right to be Free from Excessive Force.*[13]

 Plaintiffs next assert that Shirley violated their right to be free from the use of excessive force at the hands of state actor. *See* Pl.'s Compl. at 4. To prove a violation of an individual right to be free from excessive force pursuant to the Fourth Amendment, plaintiff must demonstrate that a state actor "seized" her. *See Graham v. Connor*, 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Supreme Court has articulated three definitions for determining when a state actor has "seized" an individual. First, a state actor seizes someone "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The second instance occurs when "a reasonable person would have believed that he was not free to leave" and the person in fact submitted to the assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Finally, a person is seized when there was "a governmental

termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Plaintiffs have failed to plead any factual scenario to satisfy one of the aforementioned definitions of "seizure," and they have not raised an issue of fact as to whether they were, in fact, "seized" by Shirley. Thus, the court will dismiss their claims pursuant to the Fourth Amendment's prohibition against use of excessive and unreasonable force.

### c. *Eighth Amendment.*

 In their third amended complaint, plaintiffs assert claims pursuant to the protections afforded by the Eighth Amendment. However, the Eighth Amendment applies only to individuals incarcerated in prison. *See generally Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Obviously, plaintiffs were not incarcerated at the time of the events giving rise to the present lawsuit occurred. Thus, the court will dismiss their claims pursuant to the Eighth· Amendment.

### d. *Fourteenth Amendment—Due Process.*[14]

Next, plaintiffs allege that Shirley is liable to them pursuant to the Due Process clause of the Fourteenth Amendment because "she was a willing and active participant and co-conspirator with Duncan Walker." Pl.'s Resp. at 36. Presumably, plaintiffs accuse Shirley of violating plaintiffs' right to substantive due process under the law, or creating a situation whereby Duncan could violate their right to

does not constitute competent summary judgment evidence.

13. This portion of the court's memorandum opinion addresses page 4, ¶ 14, sub-part (e) of plaintiff' third amended complaint. In their response to Shirley's motion for summary judgment, plaintiffs assert that this claim is brought pursuant to the Fourth Amendment to the United States Constitution.

14. This portion of the court's memorandum opinion addresses page 4, ¶ 14, sub-parts (f) of plaintiff' third amended complaint. In their response to Shirley's motion for summary judgment, plaintiffs assert that this claim is brought pursuant to the Fourteenth Amendment to the United States Constitution.

substantive due process. The court finds that both theories fail.

The plaintiffs were not injured by Shirley. Instead, they suffered injuries at the hands of Duncan. "[Shirley's] failure to protect [the plaintiffs] against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

The Supreme Court has recognized an exception to this general rule where a special relationship exists between the state actor and those who are injured. *See id.* at 199–200, 109 S.Ct. 998. "When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs ... it transgresses the substantive limits on state action set by ... the Due Process Clause." *Id.* at 200, 109 S.Ct. 998. In more clearly defining this "special relationship," the Fifth Circuit has held that such a relationship arises only "when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power." *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir.1995). In the present case, plaintiffs were not involuntarily confined or restrained by the state or Shirley. Thus, there was no "special relationship" by which the plaintiffs can hold Shirley liable for a violation of the Due Process Clause. *See Randolph v. Cervantes*, 130 F.3d 727, 730–31 (5th Cir. 1997), *cert. denied*, — U.S. —, 119 S.Ct. 65, 142 L.E.2d 51 (1998).

Furthermore, the Fifth Circuit has not adopted the theory of "state created" danger by which some circuits impose liability upon a state actor for violations of the Due Process Clause.[15] *See Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1415 (5th Cir.1997) (en banc); *Randolph*, 130 F.3d at 731. Even if this circuit had adopted such a theory, plaintiffs still could not prevail on their claim. To impose liability upon the state under a theory of "state created" danger, plaintiffs must demonstrate that: (1) state actors created a dangerous environment; (2) they must know it is dangerous; and (3) they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir.1994), *cert. denied*, 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995). To prove the third element, a plaintiff must demonstrate that he was "stripped of means to defend himself and cut off from sources of aid" by the state actor. *Id.* at 202.; *Randolph*, 130 F.3d at 731. Plaintiffs have failed to raise an issue of fact as to whether Shirley actively prevented plaintiffs from protecting themselves from Duncan's attack. Thus, Shirley could not be held liable under a theory of "state created" danger, even if the Fifth Circuit recognized such a theory.

e. *Remaining Constitutional Claims.*[16]

In their response to Shirley's motion for summary judgment, plaintiff's fail to address the remaining constitutional violations alleged in their third amended complaint. The court assumes they have abandoned such claims. Regardless, plaintiffs could not prevail on any of the claims asserted. Of the remaining claims, the only one that the court recognizes a right protected under the Constitution, laws, or treaties of the United States is the right to be free from unreasonable searches and seizures. *See* Pl.'s Compl. at 4. However, the facts alleged by plaintiffs in their third amended complaint fail to state a claim for

---

**15.** The Fourth Circuit recently conducted a survey of those circuits that impose liability for "state created" danger. *See Pinder v. Johnson*, 54 F.3d 1169, 1176–77 (4th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 994, 116 S.Ct. 530, 133 L.Ed.2d 436 (1995).

**16.** This portion of the court's memorandum opinion addresses page 4, ¶ 14, sub-parts (g), (h) and (i) of plaintiff' third amended complaint.

a violation of that right, or a violation of any of the remaining alleged rights asserted by plaintiffs.

### 3. State Law Claims.[17]

#### a. Texas Tort Claims Act.

█ Plaintiffs apparently intended to sue Shirley pursuant to the TTCA in her individual capacity. However, "[t]he [TTCA] does not govern suits brought directly against an employee of the State, regardless of the capacity in which he acted." *Huntsberry v. Lynaugh*, 807 S.W.2d 16, 17 (Tex.App.—Tyler 1991, no writ) (citing TEX.CIV.PRAC. & REM.CODE ANN. § 101.002 (Vernon 1986)). Therefore, the court will dismiss plaintiffs' claims under the TTCA against Shirley.

#### b. Common Law Negligence.

█ Plaintiffs allege that Shirley is liable to them for negligently causing their injuries. *See* Pl.'s Compl. at 6. The elements of a negligence cause of action consist of a duty, a breach of that duty, and damages proximately caused by that breach. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). The court does not need to evaluate the duty or breach of duty issues. There simply is no evidence that any conduct on the part of Shirley proximately caused any of the injuries or losses about which plaintiffs complain. There is no evidence of cause in fact, much less is there any evidence to support a finding in favor of the plaintiffs on the foreseeability element of proximate cause.

### IV.

### ORDER

For the reasons stated above,

The court ORDERS that the motions for summary judgment of City and Shirley be, and are hereby, granted; and

The court further ORDERS that all claims of plaintiffs against City and Shirley be, and are hereby, dismissed.

### FINAL JUDGMENT

Consistent with the memorandum opinion and order signed in the above-captioned action on the date of the signing of this final judgment,

The court ORDERS, ADJUDGES, and DECREES that all claims of plaintiffs, Laurie Abdeljalil, individually and as administratrix of the estate of Khaled Kasem Abdeljalil, deceased, Marcus Walker, and Sarah Walker, appearing through Laurie as their next friend, and Kasem Mahmoud Abdeljalil, (collectively "plaintiffs") against defendants City of Fort Worth and Shirley Walker, be, and are hereby, dismissed; and

The court further ORDERS, ADJUDGES, and DECREES that defendants have and recover from plaintiffs, jointly and severally, costs of court incurred by defendants in this action.

---

17. In their response to Shirley's motion for summary judgment, plaintiffs attempt to assert for the first time a claim for intentional infliction of emotional distress. Such claim was not alleged in their third amended complaint, and cannot be asserted for the first in plaintiffs' response to a motion for summary judgment. *See Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1255–56 (5th Cir.1995). In any event, the court has concluded that there is no evidence that would support findings of the essential elements of such a claim.